UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| DALE W. RANKIN, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 13-452-M |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Dale W. Rankin brings this action for judicial review of the Social Security Commissioner's ("the Commissioner") final decision, as issued in accordance with the ruling of an Administrative Law Judge ("ALJ") on March 15, 2012, denying his claim for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XIV of the Social Security Act.

Mr. Rankin is a 38-year-old man who last worked in 2010. Over the years, he has worked in construction, as an apprentice plumber, a machinist, and in shipping and receiving. (Tr. at 39.)[1] On September 15, 2010, Mr. Rankin filed an application seeking DIB and SSI benefits. (*Id.* at 30.) In his application, Mr. Rankin cited multiple severe impairments including "pain disorder with both psychological and physical components; somatoform disorder; major depression; degenerative disc disease of the lumbar spine, status-post fusion; left foot drop; and reflex sympathetic dystrophy ("RSD")." (*Id.* at 13.)

The Commissioner initially denied his request. He requested review of his case and a hearing before an ALJ. Mr. Rankin and a vocational expert testified during the hearing. Post-

---

[1] "Tr." refers to the "Transcript of Proceedings" filed in this case.

hearing, the ALJ determined that Mr. Rankin was not disabled in a manner such that he was entitled to receive SSI or DIB benefits. Mr. Rankin requested a review of the ruling, which the Appeals Council denied. Upon this denial, the ALJ's decision became the Commissioner's final ruling. Before the Court are Mr. Rankin's Motion to Reverse (ECF No. 8) and the Commissioner's Motion to Affirm. (ECF No. 11.)

## I. FACTUAL BACKGROUND

Mr. Rankin had lumbar spinal fusion surgery in December 2007 after unsuccessful physical therapy to treat the aftereffects of a car accident. (Tr. at 439-443.) After his March 5, 2010 disability onset date, he began treating with several doctors, raising physical issues from chronic back pain and insomnia to emotional issues such as anxiety and depression. He saw Dr. Stephen M. Scott in June 2010 for issues with his left foot. (*Id.* at 396-97.) Dr. Scott diagnosed him with a back disorder NOS, pain in limb, insomnia, anxiety disorder, headache, and sciatica. (*Id.* at 396.)

In August 2010, Mr. Rankin saw Dr. Gary L'Europa, complaining of short-term memory loss. (*Id.* at 306-309.) His test results, however, were normal and Dr. L'Europa opined that his memory may have been affected by the medications he was taking. (*Id.* at 308-309.) Observing his inability to flex his left foot, Dr. L'Europa prescribed continued physical therapy. (*Id.* at 309.) Mr. Rankin treated four times with a physical therapist, but was discharged because the treatment did not appear to help his recovery.[2] (*Id.* at 329.)

Mr. Rankin visited his primary care physician, Dr. Jason Austin, on September 10, 2010. Dr. Austin gave him a letter indicating that he was permanently disabled and incapable of

---

[2] The ALJ noted that Mr. Rankin attended thirteen physical therapy sessions, but it appears from the record that he only treated four times. (Tr. at 329.) There is a notation in the Rehabilitation Hospital of Rhode Island record to "13 visits," but perhaps that is the number of approved visits. (*Id.* at 323.)

working due to L-5 radiculopathy with foot drop and chronic pain. (*Id.* at 361.) That same month, Mr. Rankin was evaluated by Dr. Stuart Schneiderman for his pain. (*Id.* at 382-385.) Dr. Schneiderman opined that Mr. Rankin had "low back pain, degenerative disc disease, lumbar facet joint syndrome, sacroiliac joint dysfunction, status post-surgery, status post trauma, and possible RSD of the leg and lower back." (*Id.* at 384.) Mr. Rankin denied serious depression, memory loss, and shortness of breath upon examination. (*Id.* at 383.) Dr. Schneiderman recommended lumbar facet joint injections, but Mr. Rankin declined based on a past bad experience with cortisone injections. (*Id.* at 384.)

Mr. Rankin continued to treat with Dr. Austin, seeing him every two months, for breathing difficulties[3] and for help completing disability forms. (*Id.* at 386-395, 549-555, 560-564.)

Mr. Rankin also treated with Susan D. Mandel, a licensed social worker, to "deal with the long-term consequences of his 7/05 automobile accident." (*Id.* at 566.) He saw her approximately thirteen times from April to July 2011 and discussed his medical complaints as well as his goals for the future. (*Id.* at 566-67.)

On May 20, 2011, Mr. Rankin sought Dr. Schneiderman's help again for pain in his lower back that radiated down his legs. (*Id.* at 520.) The doctor again recommended injections; Mr. Rankin was open to those if they were covered by his insurance and indicated that he would

---

[3] The records indicate that Mr. Rankin saw Dr. Austin in August 2010 for post nasal drip and a metallic taste in his mouth, in September 2010, for bronchitis and help getting a disability placard; in November 2010, for trouble breathing; in January 2011, for assistance with a medical form and for pain in his left foot; in March 2011, he sought assistance with the timeline of his condition; had a routine follow-up in April 2011; in May 2011, he complained of hip pain and asked for a letter stating that he could not work; and in June 2011 for a disability letter. (Tr. at 386-395, 549-555, 560, 561.)

determine if injections were a covered service. (*Id.*) Mr. Rankin did not follow up with Dr. Schneiderman's office about the injections.

To address his breathing difficulties, Mr. Rankin treated with Dr. William J. Beliveau in April and August 2011. (*Id.* at 516, 574.) He was diagnosed with mild sleep apnea and dyspnea, a mild obstructive restrictive ventilator defect consistent with asthma. (*Id.* at 574-585.)

Mr. Rankin filed an application for disability insurance benefits and for supplemental security income on September 15, 2010. These claims were denied and Mr. Rankin requested a hearing, at which he and Ruth Baruch, a vocational expert, testified. The ALJ denied Mr. Rankin benefits, finding that Mr. Rankin was not disabled from March 5, 2010 to the date of the decision. (*Id.* at 10-22.)

The ALJ concluded that Mr. Rankin had the RFC to perform light work such as light unskilled production type jobs such as bench assembler, hand packager, inspector, or printed circuit board assembler and those jobs exist in significant numbers in the economy. (*Id.* at 15.)

## II.    STANDARD OF REVIEW

A district court's role in reviewing the Commissioner's decision is limited. Although questions of law are reviewed *de novo*, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). The term "substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The determination of substantiality must be made upon an evaluation of the record as a whole. *Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) ("'We must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the

record as a whole, could accept it as adequate to support his conclusion.'" (quoting *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981))). In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. *See Colon v. Sec'y of Health and Human Servs.*, 877 F.2d 148, 153 (1st Cir. 1989). The resolution of conflicts in the evidence is for the Commissioner, not the courts. *Rodriguez*, 647 F.2d at 222 (citing *Richardson*, 402 U.S. at 399).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*), *accord Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. *Seavey v. Barnhart*, 276 F.3d 1, 11 (1st Cir. 2001) (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).

## III. APPLICABLE LAW

The ALJ must follow five well-known steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments, which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20

C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden of proving step five. *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982).

In considering whether a claimant's physical and mental impairments are severe enough to qualify for disability, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and pronounced findings when deciding whether an individual is disabled. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

In this case, the ALJ found that Mr. Rankin met his burden of proving steps one through four. The ALJ decided that he was not disabled, however, because it found that his RFC permitted him to perform other work existing in the economy. It is the ALJ's finding on this fifth ground that forms the basis of Mr. Rankin's appeal.

## IV.    ALJ'S DECISION

Following the five steps, the ALJ found: that Mr. Rankin had not engaged in substantial gainful activity since March 5, 2010, the alleged onset of his disability (Tr. at 12); that Mr. Rankin had severe impairments including: pain disorder with both psychological and physical components, somatoform disorder, major depression, degenerative disc disease of the lumbar spine status post-fusion, left drop foot, and possible RSD (*id.* at 13); that Mr. Rankin did not have an impairment or combination of impairments which met or medically equaled one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.*); that Mr. Rankin retained the RFC to perform less than the full range of light work (*id.* at 15); that Mr. Rankin's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the above RFC (*id.* at 16); that he was unable to perform any past relevant work, (*id.* at 20); and that, considering his age, education, work experience, and RFC, Mr. Rankin was capable of performing jobs that existed in significant numbers in the national economy. (*Id.* at 21.)

## V.    ANALYSIS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" or combination of impairments "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(B); *see also* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). The ALJ found that Mr. Rankin was not disabled in accordance with the statute. Mr. Rankin's two main issues in this appeal are the ALJ's decision to give greater weight to the medical opinions of two non-treating doctors, essentially rejecting his treating doctors' opinions and his negative evaluation of Mr. Rankin's credibility as to his pain and limitations resulting therefrom.

### A.    ASSESSMENT OF MEDICAL OPINION EVIDENCE

Relevant to this case, medical opinions from treating sources generally are given "more weight" "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). When "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the regulations state that it is given "controlling weight." *Id.*; *see also Polanco-Quinones v. Astrue*, 477 Fed.Appx. 745, 746 (1st Cir. 2012). Conversely, if "a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' does not apply." *Shaw v. Sec'y of Health & Human Servs.*, No. 93-2173, 1994 WL 251000, at *3 (1st Cir. June 9, 1994). "All things being equal, however, a treating doctor's report may be entitled to 'greater' weight than an inconsistent non-treating source." *Id.*

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on other factors included in the Commissioner's regulations. 20 C.F.R. §§ 404.1527(c), 416.927. Those factors are: (1) the "[l]ength of the treatment relationship and the frequency of examination," 20 C.F.R. § 404.1527(c)(2)(i); (2) the "[n]ature and extent of the treatment relationship," 20 C.F.R. § 404.1527(c)(2)(ii); (3) the supportability of the opinion, 20 C.F.R. § 404.1527(c)(3); (4) the consistency of the opinion "with the record as a whole," 20 C.F.R. § 404.1527(c)(4); (5) the specialization of the source, 20 C.F.R. § 404.1527(c)(5); and (6) "[o]ther factors." 20 C.F.R. § 404.1527(c)(6). "Other factors" include "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other

information in [the claimant's] case record." *Id.* "If the ALJ finds, as he may, that any treating physician's opinion is not credible, then he must comply with the regulations by explicating his grounds." *Nguyen*, 172 F.3d at 36.

Turning first to the ALJ's evaluation of Mr. Rankin's treating doctor's opinions, the ALJ determined that neither Dr. Austin nor Dr. Constantine Vafidis gave opinions supported by the evidence and thus were not deserving of significant weight. Without weighing the opinions, the Court finds that the ALJ's conclusions are supported by substantial evidence and affirms his decision. Although Dr. Austin treated Mr. Rankin regularly starting in 2010, he provided little explanation for his conclusion that Mr. Rankin was permanently and completely disabled and not able to do any work. (Tr. at 20, 412.) Dr. Austin opined that Mr. Rankin could not sit, stand, walk, carry any weight, bend, squat, kneel, crawl, or use either of his hands to grasp, reach, push or pull. (*Id.* at 412.) In fact, that conclusory statement conflicted with Dr. Austin's record notes of office visits with Mr. Rankin indicating that he exhibited strength and gait that was normal. (*Id.* at 388, 390, 394, 549, 551, 553, 560.) The ALJ noted that Dr. Austin's records from March 2011 through June 2011 showed no physical abnormalities. (*Id.* at 18.) Finally, as the Government points out, Dr. Austin's opinion that Mr. Rankin was incapable of performing any work due to his disabilities conflicted with the report of Mr. Rankin's other "treating" doctor, Dr. Vafidis, who determined that Mr. Rankin retained the ability to occasionally lift and carry up to twenty pounds and could stand, walk, and climb. (*Id.* at 598-599.) Dr. Austin's opinion that Mr. Rankin could not sustain any full-time, ongoing work was also inconsistent with Mr. Rankin's own testimony about his daily activities and, as the ALJ noted in his decision, Dr. Austin's notes do not indicate that Mr. Rankin ever reported those extensive restrictions. (*Id.* at 20.)

Dr. Vafidis' opinion suffers from similar deficits. While it appears that Mr. Rankin only saw Dr. Vafidis once, causing the Court to question Mr. Rankin's characterization of him as a "treating doctor" entitled to any deference, Dr. Vafidis's ultimate conclusion as to disability was inconsistent with his own notes, as the ALJ observed in his decision. (*Id.*) Moreover, Mr. Rankin saw Dr. Vafidis, not for symptoms relating to his back pain and physical limitations, but reporting unexplained fatigue.[4] (*Id.* at 600.) Upon examination, Dr. Vafidis found Mr. Rankin to have some spinal tenderness and left foot drop. (*Id.*) Otherwise, his spine and extremities showed a good range of motion. (*Id.*) The Court finds that Dr. Vafidis' opinion was not based on the record evidence and that the ALJ's rejection of that opinion in favor of the non-treaters' medical opinions was appropriate.

Moreover, Mr. Rankin has shown no error in the ALJ's decision to credit the non-treating consultants. Dr. Thomas Bennett's opinion that Mr. Rankin retained the capacity to lift up to twenty pounds occasionally and ten pounds frequently, stand and walk for two hours in an eight hour workday and sit for six hours in an eight hour workday and is moderately limited in other areas, (*Id.* at 19), was supported by the medical records. It was appropriate for the ALJ to use that opinion as support for his RFC that Mr. Rankin can perform less than the full range of light work. Furthermore, Dr. Bennett's report was consistent with Mr. Rankin's testimony at the hearing that he could perform some daily activities. (*Id.* at 45-48, 55.) The record supports the ALJ's finding that Dr. Bennett's opinion was consistent with other evidence of record, and thus it properly supports the ALJ's RFC finding.

---

[4] The October 12, 2011 visit is characterized as a "follow up," but the Court can find no other reference to a visit with Dr. Vafidis in the record. Dr. Vafidis filled out fatigue and pain questionnaires for Social Security on October 21, 2011, but it does not appear that Mr. Rankin was with him as he completed that paperwork. (Tr. at 596-599.)

Dr. Stephen Clifford, the consulting psychologist, gave an opinion that Mr. Rankin was capable of understanding, remembering and carrying out simple routines found in unskilled work. (*Id.* at 19.) This opinion is based on Mr. Rankin's psychological records and his testimony at the hearing.

Mr. Rankin disagrees with the weight the ALJ gave to the varying medical evaluations and opinions and essentially asks this court to re-weigh the medical evidence.[5] However, it is not this Court's role to re-weigh conflicting evidence. *See Rodriguez–Pagan v. Sec'y of Health and Human Servs.*, 819 F.2d 1, 4 (1st Cir. 1987) ("it is the [ALJ's] province to resolve conflicts in the medical evidence."). The issue is not whether this Court would have reached the same conclusion had it been responsible for reviewing this case in the first instance, but whether the ALJ's RFC finding is supported by substantial factual evidence and applicable law. In this case, Mr. Rankin has shown no reversible error in the ALJ's decision to credit Drs. Clifford and Bennett over those of other treating and examining physicians or in his assessment of an RFC to perform less than the full range of light work with moderate limitations. The ALJ's RFC assessment is supported by substantial medical evidence of record and thus is entitled to deference.

---

[5] Mr. Rankin also alleges error in the ALJ's omission from consideration of Dr. Francis Sparadeo's and Dr. William Faheem's global assessment of functioning (GAF) scores. The ALJ did note those scores, however, and clearly considered whether those scores should or did affect his RFC determination. The ALJ explained that a GAF score "is not a precise functional assessment, which describes specific mental work related limitations." (Tr. at 18, n.3.) He also explained that these scores may be based on unsubstantiated complaints and may be based on behaviors that do not relate to being able to work. (*Id.*) The Court finds that the ALJ did properly weigh the GAF scores against the record evidence and in light of Mr. Rankin's and the vocational expert's testimony and thus, Mr. Rankin's exception to this point is rejected.

## B.    ASSESSMENT OF CREDIBILITY

The Court will now examine the ALJ's evaluation of whether Mr. Rankin's assessment of his own limitations and pain was credible.  Mr. Rankin asserts that the ALJ's finding that he was not entirely credible is not based on substantial evidence in the record.  (ECF No. 9 at 7-9.)  The Commissioner counters that the ALJ's credibility determination rested on evidentiary conflicts in the record.  (ECF No. 11 at 8-14.)

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Frustaglia v. Sec'y of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987).  The Court, therefore, must look to the decision and record evidence to determine whether the ALJ's credibility determination holds water.  In making his credibility determination, the ALJ relied on 1) Mr. Rankin's testimony at his hearing where he discussed his daily activities, and 2) the evidence in the record, including his failure to treat with a physical therapist or pain specialist in accordance with his doctors' suggestions.

First, it is important to note that the ALJ did not find Mr. Rankin entirely incredible.  The ALJ concluded that "the claimant's subjective complaints are credible to the extent they are consistent with the limitations" in the RFC.  (Tr. at 19.)  The ALJ further acknowledged that Mr. Rankin "may experience pain because of his accident, but the claimant has not had much recent medical treatment and has not followed through with his doctors' recommendations, suggesting that his pain is not as severe or limiting as alleged."  (*Id.*)  The ALJ did not entirely disregard Mr. Rankin's testimony in light of the record, but gave it the weight he believed was supported by the record.  The record evidence shows that, despite doctor recommendations, Mr. Rankin had not gone to physical therapy since 2010.  (*Id.* at 314, 323-335, 528.)  Mr. Rankin met with a pain specialist twice, but rejected the recommended treatment the first visit.  (*Id.* at

384.) He seemed interested in the injections at the second treatment, but failed to follow up with receiving them. (*Id.* at 382-385, 520.)

Moreover, Mr. Rankin's own hearing testimony and self-reporting is inconsistent with total disability.[6] He testified as to good days and bad days, but reported the ability to drive, shop, and fulfill parenting duties. (*Id.* at 19, 45-46, 55.) He testified that his breathing issues prevented him from getting out of bed on bad days, but the medical records show only a mild to moderate breathing restriction. (*Id.* at 517, 581.) Moreover, the ALJ had before him Ms. Mandel's notes where she noted that she was not certain whether Mr. Rankin's pain was as severe as he said it was or whether his anxiety played a part in how he viewed his pain. (*Id.* at 18-19; 566.) The Court finds that the ALJ's decision to only credit Mr. Rankin's subjective pain allegations to the extent that they were consistent with his RFC was reasonable in light of his treatment, or the lack thereof, for his alleged debilitating pain. He was given treatment options of physical therapy and lumbar injections and did not follow up on those options. It was reasonable for the ALJ to conclude that the day-to-day limitations resulting from intense pain that Mr. Rankin testified about was not as severe and disabling as reported.

Therefore, the Court upholds the Commissioner's final decision to deny Mr. Rankin benefits because his decision contained sufficient reasoning to determine that he properly applied the law and demonstrated that it was based on substantial evidence in the record.

---

[6] This Court decision in *Borino v. Astrue*, 917 F. Supp. 2d 166 (D.R.I. 2013), finding that the applicant's daily activities, as mischaracterized by the ALJ, could not form the entire basis for the ALJ's negative credibility determination is not applicable here. The ALJ in this case appropriately took a measured view of all the evidence of Mr. Rankin's daily activities in light of his medical records to determine his credibility.

## VI.    CONCLUSION

The Court DENIES Dale W. Rankin's Motion to Reverse (ECF No. 8) and GRANTS the

Commissioner's Motion to Affirm.  (ECF No. 11.)

IT IS SO ORDERED:

_____

John J. McConnell, Jr.
United States District Judge

March 28, 2014